Joseph N. Casas (SBN 225800)
Tamara M. Craft (SBN 234419)
CASAS LAW GROUP, P.C.
2323 Broadway St. Suite 202
San Diego, CA 92102
Phone: (619) 692-3146
Facsimile: (619) 692-3196
Email: joseph@casaslaw.com

Attorneys For Defendant
CORNERSTONE BUILDING GROUP

FILED
08 MAY -2 AM 9:04
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: ___ DEPUTY

NUNC PRO TUNC
APR 29 2008

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALOMAR GRADING AND PAVING, INC., a California Corporation; and THE UNITED STATES OF AMERICA For The Use And Benefit Of PALOMAR GRADING AND PAVING, INC.; <br><br>Plaintiff, <br><br>vs. <br><br>WESTERN INSURANCE COMPANY and CORNERSTONE BUILDING GROUP <br><br>Defendant. | CASE NO. 08 CV 521 JAH WMc <br><br>DEFENDANT CORNERSTONE BUILDING GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO COMPEL MEDIATION AND STAY PROCEEDINGS |

Defendant Cornerstone Building Group (hereinafter "CBG") submits the following memorandum of points and authorities in support of its motion to compel mediation of the claims alleged against them by plaintiffs, and to stay the proceedings of this court for damages pending mediation.

## I. INTRODUCTION

This case involves claims by subcontractor, plaintiff Palomar Grading and Paving, Inc. (hereinafter "Palomar") against contractor CBG and the corporate surety of bonds, defendant Western Insurance Company (hereinafter "Western"). On November 6, 2006, subcontractor Palomar entered into a written agreement with contractor CBG to perform

construction work at 3300 Smart Clinic on Naval Base San Diego, in San Diego California (hereinafter "Subcontract"). Palomar alleges that CBG breached the Subcontract between Palomar and CBG by unlawfully withholding payment for services provided by Palomar, CBG converted the sums due to Palomar, and Western denied Palomar's bond claim in bad faith and in violation of the Miller Act.

The Subcontract between CBG and Palomar contains broad mediation provisions mandating that all disputes between CBG and Palomar, whether based in contract or tort, must be mediated. CBG seeks to exercise its contractual right to mediation of the claims asserted against it by Palomar, and therefore seeks to compel mediation of those claims.

Furthermore, CBG seeks a stay of this action until the completion of the mediation, and, at minimum, assert their right to a stay of all proceedings until this motion is heard and decided, pursuant to the Federal Arbitration Act of 1998, 9 U.S.C. §§ 3-4 (1998).

## II. THE SUBCONTRACT'S MEDIATION CLAUSE FALLS WITHIN THE PURVIEW OF THE FEDERAL ARBITRATION ACT, WHICH MANDATES DISTRICT COURTS TO DIRECT THE PARTIES TO PROCEED TO MEDIATION.

The Federal Arbitration Act of 1998, 9 U.S.C. §§ 1-15 (1988) (hereinafter "The Act") governs this Court's analysis in granting an order compelling mediation. The Act defines arbitration as a process that will "settle" the controversy. 9 U.S.C. § 2. Because the mediation clause in the Subcontract manifests CBG and PALOMAR's intent to provide an alternative method to "settle" controversies arising under their subcontract, the mediation clause fits within the Act's definition of arbitration. *See,* AMF, Inc. v. Brunswick Corp., 621 F. Supp. 456 (E.D.N.Y. 1985.)

The language is clearly broad enough to suits brought under the Miller Act. Further, nothing in the language of the Miller Act itself precludes agreements to arbitrate. U.S. for Use and Benefit of Industrial Engineering & Metal Fabricators, Inc. v. Eric Elevator Corp., 214 F.Supp. 947, 948 (D.C. Mass. 1963.) In general, parties can agree

to submit to arbitration rights created by statute as well as those arising at common law unless the right is one of a character inappropriate for enforcement by arbitration. *See, United States for Use and Benefit of Ray Gains, Inc. v. Essential Const. Co.,* 261 F.Supp. 715 (D.C. Md. 1966.) Miller Act cases have been considered as typical of situations in which arbitration is both appropriate and useful and the courts uniformly appear to hold that the provisions of The Act are ordinarily applicable to Miller Act cases. *See, Wilko v. Swan,* 346 U.S. 427, 432, 435 (1953); *United States for Use and Benefit of Air-Con, Inc. v. Alcon Development Corp.,* 271 F.2d 904 (4th Cir. 1959); *United States for Use and Benefiit of Frank A. Trucco & Sons Co. v. Bregman Construction Corp.,* 256 F.2d 851 (7th Cir. 1958).

### III. THE MEDIATION CLAUSE IN THE SUB-CONTRACT IS INLCUSIVE OF PALOMAR'S CLAIMS AND IS THE EXCLUSIVE REMEDY FOR PALOMAR.

#### A. The Sub-Contract Clearly Demonstrates the Parties' Intent to Mediate Disputes.

On October 2, 2006, Palomar signed a Long Form Subcontract with CBG. That agreement contains a broad mediation provision, whereby Palomar and CBG agreed that all claims between them, whether sounding in contract or in tort, would be mediated. (See Affidavit of Joseph N. Casas in Support of Defendant Cornerstone Building Group's Petition to Compel Mediation and Stay Proceedings filed concurrently herewith ("Casas Dec."), ¶ 4, and Ex. "A" of Motion to Compel Mediation ("Motion to Compel") (Subcontract, dated October 6, 2006, pp. 17-18.) The mediation provision states in relevant part:

> Claims not Involving Owner. To the extent Subcontractor submits a claim which Contractor determines is one for which Owner may not be liable, or is one which Contractor elects to not allow Subcontractor to further pursue with Owner, or to the extent Contractor has a claim against Subcontractor, the following procedures shall apply and begin within 60 days of notification:
>
> (a). If the dispute cannot be settled thought direct discussions, the parties shall attempt to settle the dispute by mediation before recourse to any other method of dispute resolution. Unless the parties agree otherwise,

the mediation shall be conducted in accordance with the Construction Mediation Rules of the American Arbitration Association.

(b). If mediation does not resolve the dispute, then the parties may agree to resolve the dispute through binding arbitration. If so, the arbitrator(s)' decision shall be enforceable in a court of law and judgment shall be entered in accordance with such decision.

(c). If mediation does not resolve the dispute and the parties do not agree to resolution by binding arbitration, either party may proceed with any allowable resolution process.

(See Exhibit "A" of Motion to Compel, pp. 17-18.)

This mediation provision expressly indicates Palomar and CBG agreed and intended to mediate disputes related to the Subcontract. Despite the mediation provision, counsel for Palomar filed a complaint in this court on March 20, 2008 after informal attempts to resolve the dispute with CBG were unsuccessful. Because Palomar failed to comply with the mandatory mediation provision, CBG was forced to file this motion to compel mediation.

### B. The Mediation Clause Is Broad Enough To Cover This Dispute.

The Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); *see also,* AT&T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986) (where the presence of arbitration clause creates a presumption of arbitrability.) A court should grant a request for an order to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., 475 U.S. at 650 (citing Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583 (1960)). Further, the presumption in favor of arbitration acquires particular significance when the arbitration clause is broadly worded. *See,* AT&T Technologies, 475 U.S. at 650. Such circumstances call for arbitration of any grievance not expressly excluded by

1  the arbitration clause, unless there exists "the most forceful evidence of a purpose to
2  exclude the claim for arbitration." *See,* AT&T Technologies, 475 U.S. at 650 (quoting
3  United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-585
4  (1960).)
5         Here, paragraph 15.1 of the Subcontract states that "to the extent Subcontractor
6  submits a claim which Contractor determines is one for which Owner may not be liable,
7  or is one which Contractor elects to not allow Subcontractor to further pursue with
8  Owner, or to the extent Contractor has a claim against Subcontractor", the parties <u>must</u>
9  go to mediation for such claim before the parties engage in litigation.  This provision is
10 broadly worded and covers all disputes relating to the Subcontract.  Palomar's dispute is
11 a dispute related to the Subcontract because it relates to the performance of services
12 under the Subcontract.   Because the dispute relates to the Subcontract the mandatory
13 mediation provision in Section 15.1 of the Subcontract applies and the parties should be
14 compelled to mediate the dispute.
15        Further, Palomar's claim is not excluded, as stated, the only claim that would be
16 excluded from the mediation clause would be one from the Subcontractor against the
17 Owner (Palomar against Navy), where Owner (Navy) is either liable or Contractor allows
18 Subcontractor to pursue Owner.  However, none of the claims alleged by Palomar
19 (Subcontractor) are against the Owner (United States Navy).  Thus, this broadly worded
20 mediation provision applies and creates a strong presumption in favor of mediation.
21        Even if Palomar's allegations only "touch matters" covered by the agreement,
22 then claims based on those allegations must go to mediation.  Mitsubishi Motors Corp. v.
23 Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985).  Palomar's allegations against
24 CBG relate, broadly speaking, to the Subcontract (performance of construction services),
25 and therefore "touch matters" covered by the Subcontract.  Specifically, Palomar alleges
26 that (1) CBG breached the contract by failing and refusing to pay Palomar for
27 performance of construction work; (2) CBG converted money due to Palomar for its
28 construction work performed; and (3) Western, in bad faith, has denied Palomar's claim

on the bond that guaranteed the payment for the construction work performed. Palomar's claims are clearly related to the Subcontract and are not made against the Owner (Navy), and are therefore covered by the mediation agreement.

### IV. THE DISTRICT COURT SHOULD COMPEL THE PARTIES TO MEDIATE AND STAY THE PROCEEDINGS IN THIS CASE BECAUSE ALL THE CLAIMS ARE SUBJECT TO MEDIATION

Congressional policy, as embodied in the Federal Arbitration Act, favors enforcement of arbitration clauses in commercial contracts. *See,* Mitsubishi Motors Corp. 473 U.S. at 625; *see also,* Moses H. Cone Memorial Hosp., 460 U.S. at 24. Section 2 of The Act expresses this preference, stating that written agreements to arbitrate in such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Section 4 of the Federal Arbitration Act provides that, if the court is satisfied that the parties agreed to arbitrate the claims alleged, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Section 4 states:
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day

of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof. 9 U.S.C. § 4.

In light of the expressly stated mediation provision between CBG and Palomar, and CBG's request and petition to the Court for an order compelling mediation in accordance with the Subcontract, the Court must issue an order compelling mediation.

Section 3 of the Federal Arbitration Act further provides that, upon application of a party, any court of the United States *must* stay the proceedings of any actions arising from claims that are arbitrable and are referable to arbitration under an agreement in writing for such arbitration. These statutory provisions remain mandatory, as the Supreme Court emphasized in *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985). Section 3 states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3.

Palomar brought suit before a court of the United States for issues referable to arbitration under the Subcontract. Because Palomar's issues alleged in the suit are arbitrable CBG does hereby request and move for a stay of all district court proceedings concerning the claims alleged against it until after conclusion of the mediation requested by this motion is concluded.

///

///

///


## V. CONCLUSION

For the foregoing reasons, defendant CBG respectfully requests that the Court grant its petition to compel mediation of the claims against it, and to stay the proceedings in this court.

Dated: 4/29/08

Respectfully submitted,

CASAS LAW GROUP, P.C.

By: Joseph N. Casas / Tamara M. Craft
Attorneys for Defendant
Cornerstone Building Group